IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

HILLCREST MEDIA, LLC                                                              PLAINTIFF

V.                                          4:09CV00124 JMM

FISHER COMMUNICATIONS, INC.                                              DEFENDANT

## ORDER

Defendant, Fisher Communications, Inc. ("Fisher") asks the court to dismiss plaintiff's claims against it for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff has responded and Defendant has filed a reply. For the reasons set forth below, defendant's motion to dismiss is granted.

*Factual Background*

Plaintiff, Hillcrest Media, LLC ("Hillcrest"), filed this action against Fisher in Pulaski County Circuit Court alleging breach of contract. Fisher removed the case to this Court based on diversity jurisdiction. This action arises out of an agreement allegedly formed between Hillcrest, an Arkansas limited liability company and Fisher, a Washington State corporation.

Fisher argues that in June 2006, it entered into an agreement with Christopher Racine, a resident of Washington State, to purchase 100 percent of the outstanding stock in African-American Broadcasting ("AAB"). The stock purchase agreement transferred ownership of AAB and KWOG television station, both of which are located in Washington State. Prior to the stock purchase, Fisher contends that it had discussed with Equity Broadcasting, Inc. ("Equity"), an Arkansas corporation, the possibility of having Equity purchase the assets of KWOG television station, which was owned by AAB - and transfer those assets to Fisher in exchange for a fee.

Fisher asserts that on March 24, 2006, it sent Larry Morton, then an executive with Equity, a letter that summarized the status of the negotiations between Fisher and Equity. Fisher argues that the letter set forth certain conditions and stated that if those conditions were acceptable, Fisher and Equity would "discuss the preparation of a more definitive document." Fisher contends that it never prepared a "more definitive document" as Equity was unable to make progress on an asset purchase of KWOG.

Hillcrest, an affiliated entity of Equity, claims that the parties executed a Memorandum of Understanding on or about March 24, 2006 in which it agreed to execute an Asset Purchase Agreement with African-American for the purchase of KWOG. Hillcrest argues that on or about April 7, 2006, a draft of the proposed Asset Purchase Agreement by and between Equity and African-American of all the assets used and or held for use in the operation of KWOG was forwarded to all parties. Thereafter, Fisher entered into a Stock Purchase Agreement with Racine and African-American for $16,000,000. Hillcrest contends that pursuant to the March 24, 2006 agreement, it became entitled to payment of $500,000 upon Fisher's purchase of the outstanding stock of AAB.

Fisher contends that Hillcrest's complaint fails to establish personal jurisdiction over it. Fisher, is a corporation incorporated in Washington, with its principal place of business in Seattle, Washington. Fisher is not licensed to do business in Arkansas, does not own any property in Arkansas, does not maintain offices, employees, bank accounts, telephone listings or inventory in Arkansas. Fisher does not advertise in Arkansas, has not designated an agent for service of process in Arkansas and is not subject to taxes, regulation or licensing in Arkansas. Fisher contends that no executive, employee, or agent traveled to Arkansas as part of any

negotiation with Larry Morton or Equity regarding the purchase of KWOG, and any communications regarding a potential agreement were made solely by email, facsimile, mail or the telephone.

Fisher states that on occasion, advertisers have purchased air-time on Fisher owned or operated television and radio stations through two Arkansas based advertising agencies, Master Piece Advertising and Ron Sherman Advertising. In 2007, $355,870 in ads were purchased through Ron Sherman Advertising, constituting .22 percent of Fisher's total net revenue for 2007. In 2008, $213,195 in ads were purchased through Ron Sherman Advertising and $5,220 in ads were purchased through Master Piece Advertising, constituting .13 percent of Fishers total net revenue in 2008. To date in 2009, $263,145 in ads have been purchased through Ron Sherman Advertising. Further, Fisher has purchased products and services from various vendors based in Arkansas. Since 2006, those purchases have totaled approximately $70,000.

Hillcrest contends that an employee of Fisher was physically present in the state in early 2006 during which time the parties discussed the agreement at issue. Hillcrest clams that this meeting led to the Memorandum of Understanding sent by Fisher to Hillcrest. Further, Hillcrest points to Fisher's unrelated business in Arkansas to support jurisdiction.

*Standard of Review*

"When personal jurisdiction is challenged, plaintiff has the burden to show that jurisdiction exists." *Burlington Industries, Inc. v. Maples Industries Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996). "[T]o defeat a motion to dismiss for lack of personal jurisdiction, the plaintiff need only make a prima facie showing of jurisdiction, by affidavits, exhibits, or other evidence." *Romak USA, Inc. v. Rich, et al.*, 384 F.3d 979, 983 (quoting *Epps v. Stewart Info. Serv. Corp.*,

327 F.3d, 642, 647 (8th Cir. 2003).  The court views the evidence in light most favorable to plaintiff and the burden of establishing jurisdiction does not shift to the party challenging jurisdiction.  *Romak*, 384 F.3d at 983-84.

To decide whether jurisdiction exists, the court must determine (1) whether a forum state's long-arm statute permits the assertion of jurisdiction and (2) whether the assertion of personal jurisdiction violates federal due process.  *Graphic Controls Corp. v. Utah Medical Products, Inc.*, 149 F.3d 1382, 1385 (Fed.Cir. 1998).  Because the Arkansas long-arm statute authorizes the exercise of jurisdiction over non-residents to the maximum extent permissible under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, the Court looks to whether the assertion of personal jurisdiction would violate the Due Process Clause.  *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004).

"Due process requires 'minimum contacts' between [a] non-resident defendant and the forum state such that 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Burlington Indus.*, 97 F. 3d at 1102 (quoting *World-Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 291-92 (1980)).  "The defendant's conduct and connection with the forum state must be such that [the] defendant should  "reasonably anticipate being haled into court there." *Id*. (quoting *World-Wide Volkswagon*, 444 U.S. at 297).  The United States Supreme Court has warned that "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi Metal Industry Co., Ltd. v. Superior Court of California, Solano County,*  480 U.S. 102, 114 (1987).   A non-resident defendant may not be haled into court as a result of  "random," "fortuitous," or

"attenuated" contacts with the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

> To evaluate the propriety of jurisdiction, "[w]e consider: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties."

*Bell Paper Box, Inc. v. Trans Western Polymers, Inc.* 53 F.3d 920, 922 (8th Cir.1995); *Romak*, 384 F.3d at 983. The Eighth Circuit gives significant weight to the first three factors*. Id*.

The Supreme Court has set forth two theories to evaluate minimum contacts, general jurisdiction and specific jurisdiction. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16(1984). Both general jurisdiction and specific jurisdiction require "some act of by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. at 253.

"Under the theory of general jurisdiction, a court may hear a case where the defendant has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum. . . . In contrast, specific jurisdiction is viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state. ." *Dever*, 380 F.3d at 1073, *citations omitted*.

*Discussion*

Hillcrest argues that the Court has the power to exercise both specific and general jurisdiction over Fisher.  As to specific jurisdiction, "due process is satisfied if the defendant has purposely directed its activities at forum residents, and the litigation results from injuries arising out of, or relating to, those activities." *Guinness Import Co. v. Mark VII Distributors, Inc.* 153 F. 3d 607, 614 (8th Cir. 1998).  Hillcrest argues that an employee of Fisher was physically present in the state while negotiating the agreement which is the subject of this action.  Further, Hillcrest contends that it had contact with Fisher through mail, email and the telephone.

"Merely entering into a contract with a forum resident does not provide the requisite contacts between a defendant and the forum state." *Iowa Elec. Light and Power Co. v. Atlas Corp.* 603 F.2d 1301, 1303 (C.A.Iowa, 1979).  Further, visits to the forum state are insufficient to support personal jurisdiction if they are too few in number and too slight in quality. *See Sybaritic, Inc. v. Interport Int'l, Inc.*, 957 F.2d 522, 524 (8th Cir.1992) (defendant's two-day trip to forum to examine plaintiff's facilities and subsequent telephone and mail communications insufficient contact); *Morris v. Barkbuster, Inc.*, 923 F.2d 1277, 1279 (8th Cir.1991) (defendant's employees' three trips to forum insufficient contact).

Viewing the facts in the light most favorable to Hillcrest, the Court finds that Fisher's contacts with Arkansas are insufficient to support specific jurisdiction.  Fisher's contacts with Arkansas, including the alleged 2006 visit and subsequent emails, telephone calls and letters were too few in number and slight in quality.  These limited contacts with Arkansas in connection with the agreement are insufficient to establish specific jurisdiction. *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F. 2d 450, 453 (8th Cir. 1977) ("The use of arteries

6

of interstate mail, telephone, railway and banking facilities is insufficient, standing alone, to satisfy due process."). The alleged contract at issue was signed by Fisher in Washington and involved the sale of property in Washington. The Court cannot find that Fisher availed itself of the benefits and protection of Arkansas law.

Hillcrest argues that general jurisdiction exists based on Fisher's past negotiations for the purchase of Oregon and Idaho television stations in Little Rock and business activities in Arkansas. Fisher's contacts with Arkasnas are limited to advertising purchased on Fisher owned or operated television and radio stations through two Arkansas based advertising agencies, constituting .22 percent of Fisher's total net revenue for 2007 and .13 percent of Fishers total net revenue in 2008. Further, Fisher has purchased products and services from various vendors based in Arkansas, since 2006, those purchases have totaled approximately $70,000 as compared to Fisher's net operating expenses of $117.3 million in 2007 and $135.7 million in 2008. Finally, Hillcrest points to the fact that in 2006 Fisher purchased several Oregon and Idaho television stations from Equity Broadcasting Company and the purchase of these stations was negotiated in Arkansas.

The Court finds these contacts insufficient to warrant general jurisdiction. The contacts do not rise to the level of "continuous and systematic" business contacts sufficient to find that the defendant purposely availed itself of the privilege of conducting business in Arkansas such that it should reasonably anticipate being haled into Court here. *Cf. Helicopteros*, 466 U.S. at 418 ("[W]e hold that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."). Fisher is not licensed to do business in

Arkansas, does not own any property in Arkansas, does not maintain offices, employees, bank accounts, telephone listings or inventory in Arkansas. Fisher does not advertise in Arkansas, has not designated an agent for service of process in Arkansas and is not subject to taxes, regulation or licensing in Arkansas.  The Court finds that Hillcrest has failed to make a prima facie showing of general jurisdiction.

For these reasons, defendant Fisher Communications, Inc.,'s motion to dismiss, docket # 11, is granted.

IT IS SO ORDERED this 15th day of June, 2009.

_____
James M. Moody
United States District Judge